UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2025 AUG 18 PM 2:59
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
    DEPUTY

ALISA GOLZ, Individually and as Next Friend of her minor children,
PARKER GOLZ and GREYSON MCCALLUM,
Plaintiffs,

v.

TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES (DFPS);
MAERETHA WILBURN, in her individual and official capacities;
CHELSEA CAMPOS, in her individual and official capacities;
BRIDGET O'SHAUGHNESSY, in her individual and official capacities;
QUEST DIAGNOSTICS INC.;
OMEGA LABORATORIES, INC.;
I3SCREEN LLC;
TEXAS DRUG & ALCOHOL TESTING SERVICES, INC.;
Defendants.

Case No. 1:25CV01316 ADA
_____

(42 U.S.C. §§ 1983, 1985; Title II ADA, 42 U.S.C. § 12132;
Evidence Fabrication; Conspiracy; State Law)

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

I. INTRODUCTION

Plaintiffs Alisa Golz and her minor children Parker Golz and Greyson McCallum (by and through their mother and Next Friend, Alisa Golz) bring this action to redress a coordinated course of unconstitutional and unlawful conduct by Texas DFPS employees and affiliated laboratories.

Defendants fabricated and misrepresented drug test results, coerced agreements, conducted warrantless home searches, discriminated under the ADA, suppressed exculpatory evidence, misled courts through false reporting, unlawfully interfered with familial association by prohibiting sibling contact and denying unsupervised family visits, and withheld lawful emergency assistance funds, causing unjust and prolonged family separation and emotional harm.

This suit seeks declaratory, injunctive, and monetary relief for violations of the Fourth, Fifth, First, and Fourteenth Amendments, Title II of the ADA, 42 U.S.C. §§ 1983 and 1985, and Texas law.

## II. JURISDICTION AND VENUE

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) for federal civil rights violations.

Supplemental jurisdiction exists under 28 U.S.C. § 1367 for state-law claims.

Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Travis County, Texas, is the primary location of events.

## III. PARTIES

Plaintiffs:

Alisa Golz, resident of Travis County, Texas, biological mother of Parker Golz (born 09/08/2013) and Greyson McCallum (born 11/06/2024). Diagnosed with ADHD and lawfully prescribed Desoxyn.

Parker Golz (minor), appearing through Next Friend Alisa Golz. Suffered denial of custody, prohibited sibling and family contact, and communication restrictions severely impacting his wellbeing.

Greyson McCallum (minor), appearing through Next Friend Alisa Golz. Subjected to unlawful removal and daycare withholding absent court order, and denied sibling visits and parental contact.

Defendants:

Texas DFPS and individual employees Maeretha Wilburn, Chelsea Campos, Bridget O'Shaughnessy.

Quest Diagnostics Inc., Omega Laboratories Inc., i3Screen LLC, Texas Drug & Alcohol Testing Services Inc.

## IV. FACTUAL ALLEGATIONS

A. False Drug Exposure Allegations at Birth

On November 6, 2024, Plaintiff Alisa Golz gave birth to her youngest child, Greyson McCallum, in Travis County, Texas. Within 24 hours of birth, the Texas Department of Family and Protective Services (DFPS) initiated an investigation alleging that Greyson was exposed in utero to methamphetamine and fentanyl.

Critically, the meconium drug screen — the scientifically accepted test for prenatal drug exposure — remained pending at the time of this allegation and did not return until November 25, 2024. Plaintiff was never provided a copy or notification of this report before the initiation of CPS enforcement actions.

DFPS repeatedly alleged fentanyl exposure yet deliberately omitted the incontrovertible medical fact that fentanyl had been administered to Plaintiff by emergency medical personnel due to a life-threatening medical emergency during labor.

Hospital records from the birth hospitalization, consisting of official Apgar scores and nursing assessments, confirm that Greyson exhibited no signs of drug withdrawal or neonatal abstinence syndrome at birth or during his stay. Both Apgar scores were in the 90th percentile, entirely refuting DFPS's theory of illicit drug exposure and harm. These records constitute critical exculpatory evidence that DFPS disregarded or suppressed in its reporting.

Based on this false premise, on November 8, 2024, DFPS investigator Karen Golden approached Plaintiff in the hospital and induced her to sign a Safety Plan that conditioned closure of the

investigation on her agreement to submit to a single drug test over the ensuing two weeks, with reassurance that is the drug test returns clean, Ms.Golden would close the case. Plaintiff, physically and emotionally vulnerable seven days postpartum and suffering preeclampsia, signed this plan under those conditions.

B. Warrantless Search, Coercion, and Police Threats

On November 11, 2024, merely days after the birth and initial Safety Plan, Investigator Chelsea Campos entered Plaintiff's home without a warrant, court order, or proper advisement of rights as required by Texas Family Code § 261.302.

Campos conducted an invasive search of locked, adult-only areas of Plaintiff's home, including private rooms and cabinetry, documenting the interior with photographs and videos. This entry was made without exigent circumstances, probable cause, or judicial authorization, violating Plaintiff's and her family's constitutional protections against unreasonable searches.

During this event, Campos intentionally summoning uniformed police officers with flashing lights to Plaintiff's residence served as a tactic of intimidation rather than a reflection of any genuine emergency. Plaintiff, still recovering from childbirth complications, was coerced under threat of immediate child removal to sign a Parent-Child Safety Plan (PCSP).

Campos expressly threatened that failure to comply would result in not only immediate removal of the children but also prolonged, possibly permanent, state interference, compelling Plaintiff to accept the Safety Plan under extreme duress. Despite Plaintiff's valid requests and ongoing needs, no emergency assistance or reunification services were offered or provided, in blatant disregard of DFPS's internal assessments recognizing Plaintiff's eligibility.

C. Arbitrary Reversal of DFPS Findings Without Evidence

Following an internal investigation, on December 30, 2024, DFPS formally issued a Notice of Finding that Plaintiff's eldest child, Parker Golz, was not neglected, ruling out the allegations entirely.

Shockingly, on April 8, 2025, without presentation of any new evidence or relevant change in circumstances, DFPS reversed this conclusion to "Reason to Believe" neglect had occurred. This

about-face directly contravenes established Texas jurisprudence as articulated in In re B.L.D., 113 S.W.3d 340 (Tex. 2003), which mandates that such reversals be supported by substantial new evidence and due process.

Further obfuscating the truth, DFPS's Permanency Report restated this adverse finding but conspicuously omitted mention of the prior "Ruled Out" decision, depriving Plaintiff of meaningful notice to challenge the reversal.

DFPS demonstrated inconsistent targeting of Plaintiffs' children: a March 17, 2025 investigation targeted only Greyson initially, whereas subsequent filings added Parker but dropped Greyson, evidencing selective enforcement.

Investigator Kass, who conducted fieldwork during this time, explicitly reported observing no signs of neglect or abuse but nevertheless issued adverse findings without justification. Plaintiff was never served with these findings as legally required by Tex. Fam. Code § 261.307(a), severely restricting her ability to respond or appeal.

D. Fabricated Use of Invalid Oral Swab at April 1, 2025 Hearing
On March 25, 2025, a lab test of Plaintiff's oral fluid was flagged as "Invalid" due to abnormal total protein levels. Despite this, DFPS presented the test result as "Positive" at an emergency removal hearing on April 1, 2025, explicitly requesting the court impose a "court-ordered" safety plan.

By statute and practice, Safety Plans are voluntary and must be agreed upon by the parent; they cannot be compelled under duress or imposed without consent or judicial process. Yet Plaintiff neither received official notice of this hearing nor the opportunity to contest either the test's admissibility or the seizure of her children. These violations constitute flagrant due process failures prohibited by both Texas Family Code § 262.201 and the Fourteenth Amendment to the U.S. Constitution.

At the time of this hearing, both Parker and Greyson had already been removed from Plaintiff's care, with Plaintiff discovering these proceedings only later through agency channels.

On April 2, 2025, under continued duress and threat of permanent removal, Plaintiff was forced to sign a Safety Plan concerning Parker only, while both children remained barred from her custody for over four months.

Despite Parker's repeated assurances to CPS, CASA, and his guardian ad litem that he was safe and loved by Plaintiff, and expressed desires to return home, DFPS deliberately ignored these statements. Their own Family and Safety Needs Assessments explicitly recorded Parker as thriving in Plaintiff's care prior to removal, yet post-removal reports claimed he was "not doing well" and recommended therapy because of trauma.

E. Illegal Ex Parte Removal and Coercion
On May 29, 2025, Wilburn, acting under color of law, pursued and successfully obtained an ex parte Temporary Managing Conservatorship (TMC) order removing Parker from Plaintiff, notwithstanding that there was no emergency, no ongoing risk, and no factual basis.

Notably, Parker was not residing with Plaintiff at the time; he resided instead with Melanie Aguilar, an approved alternative caregiver. Plaintiff's mother was also available for placement, yet Defendants disregarded these facts.

Defendant Wilburn made injurious statements directly to Parker, falsely branding Plaintiff as "not a safe person to live with or be around," without any judicial determination or supporting evidence.

These actions clearly demonstrate intent to alienate Parker from his mother, cause emotional harm, and fabricate justification for unnecessary state intervention, in violation of Plaintiff's parental rights under the Due Process Clause and Texas Family Code §§ 262.002, 262.1015.

F. Hair Testing Abuse, Chain-of-Custody Violations, and Evidence Tampering
Omega Laboratories conducted hair sample segmentation at 0.5-inch intervals but claimed a 90-day detection window, contradicting federal standards for hair testing (82 Fed. Reg. 7920).

Laboratory analyses ignored Plaintiff's lawfully prescribed Desoxyn medication and reported biologically implausible quantitative values.

Texas Drug & Alcohol Testing Services backdated chain-of-custody forms, failed to document specimen temperatures, and lost key custody records.

i3Screen altered test data after Plaintiff's complaints in a transparent effort to obstruct review and due process.

Independent forensic review revealed multiple fundamental violations of Texas Rules of Evidence 901(b)(1), 902(11), and SAMHSA/DOT protocols, including:

Implausible and inconsistent metabolite profiles within hair segments from a single specimen (e.g., one segment testing positive for methamphetamine while another segment tested negative).

Lack of documented chain-of-custody during hair segment separation and transfer to lab analysts.

Absence of signature and date verification on critical chain-of-custody and segmentation documentation.

Vague courier transfer records lacking signature or tracking data.

Seal integrity defects and inconsistent case numbers and documentation formats between labs.

These severe deficiencies break the evidentiary chain and negate the reliability and admissibility of lab results, rendering their use in affidavits and removal proceedings fraudulent and violative of due process.

G. Unlawful Custody Interference and Daycare Seizure
Defendant Wilburn instructed Greyson's daycare to refuse release to Plaintiff without any signed Safety Plan or court order authorizing such action, constituting an improper seizure without due process.

This withholding was maintained for months, further exacerbating harm and interfering with Plaintiff's constitutionally protected parental custodial rights.

H. Denial of Sibling and Family Association

For a continuous period exceeding four months, DFPS prohibited Parker and Greyson from seeing each other, although sibling interaction is recognized as a fundamental liberty interest under the Fourteenth Amendment. No documented or justifiable reason was ever provided for denying these visits.

Parker was forbidden from having unsupervised visits or unrestricted communication with his maternal grandmother — previously an approved safety placement — again without cause or notice.

Parker was also prevented from having unsupervised, private communications with his mother despite repeated requests and no evidence of harm or risk.

These actions caused profound psychological trauma to the children and constitute unconstitutional interference with familial association.

I. Procedural Violations and Delay of Hearings

Under Tex. Fam. Code § 262.201, Plaintiff was statutorily entitled to an adversary hearing within 14 days of child removal to contest custody. Instead, almost 90 days elapsed without a hearing, prolonging unjustified separation.

On June 30, 2025, DFPS enforced court orders that were unsigned and unauthenticated, further violating procedural and substantive due process as established in In re D.W., 498 S.W.3d 100 (Tex. 2016).

J. ADA Violations and Retaliation

Plaintiff disclosed her ADHD diagnosis and lawful prescription of Desoxyn multiple times and requested reasonable accommodations such as extended deadlines, written instructions, and neutral observers.

DFPS denied all accommodation requests, instead labeling her disability symptoms as parental "noncompliance," and retaliated against Plaintiff after she challenged drug test irregularities and discrimination.

DFPS Program Director Jamie Walker demeaned Plaintiff's medication as "legal meth" and threatened removal for appropriate treatment, violating Title II of the ADA and implementing a hostile and discriminatory environment.

K. Suppression of Evidence and Failure to Comply with Subpoenas
On or about July 29, 2025, Defendant DFPS and contracted laboratories failed to comply with lawful subpoenas requesting full disclosure of drug test data, chain-of-custody documentation, and internal communications.

Multiple DFPS personnel, together with the Office of Consumer Affairs, denied Plaintiff the right to cross-examine evidence or witnesses pertaining to removal proceedings. This obstruction further violated Plaintiffs' constitutional and statutory rights to discovery and a fair hearing.

L. Multiple Independent Evaluations Confirm Parenting Fitness
DFS records, including Court Appointed Special Advocate (CASA) reports, psychologist evaluations, and OSAR substance use assessments, overwhelmingly and consistently affirm Plaintiff's suitability as a parent.

CASA and DFPS staff repeatedly documented a safe, supervised, orderly home environment in the Plaintiff's residence, with adequate food, hygiene, health care, and developmentally appropriate care for her children.

Emotional bonds between Plaintiff and her children were continuously observed; staff recorded children as calm, happy, and thriving prior to removal, with Parker by name communicating feeling safe and affectionate toward his mother and grandmother.

Psychological evaluation dated June 3, 2025, verified no mental health or substance abuse barriers to parenting, mental resilience, and effective ADHD management.

Despite this, Defendants intentionally disregarded these findings and relied on fabricated evidence to justify removals and ongoing custody restrictions.

M. Arbitrary and Unsupported Elevation of Risk Assessment
DFPS abruptly escalated the risk level of Plaintiff's family from "Safe/Low Risk" to "High Risk – Open" without factual support or evidentiary basis.

This reclassification coincided with the formal transition from investigation to conservatorship, appearing designed solely to rationalize prolonged interference with parental rights.

Such arbitrary action contravenes Texas Family Code §§ 261.101–.302 and violates Plaintiff's fundamental liberty interests.

N. Fifth Amendment Self-Incrimination Violation
Throughout DFPS investigations, Plaintiff was repeatedly questioned and compelled to provide statements regarding her medication, behavior, and home environment.

At no point was Plaintiff informed of her constitutional right to remain silent or her right to counsel prior to or during these interviews, violating her Fifth Amendment privilege against self-incrimination incorporated through the Fourteenth Amendment.

Coerced statements obtained without appropriate warnings were used by Defendants as substantive evidence to support removal and adverse decisions.

O. Denial of Emergency Assistance Funds
Plaintiff, Parker, and Greyson were formally approved under DFPS guidelines for Emergency Assistance (EA) funds to support family stability, housing, and basic needs during the CPS process.

Despite repeated inquiries and documented approvals, no EA funds or support were ever delivered. This neglect exacerbated financial instability, compromised reunification efforts, and inflicted additional emotional hardship on the family.

P. Delayed Adversary Hearing Beyond Statutory Deadline and Dismissal Without Prejudice

Texas Family Code § 262.201 requires that after a child's removal, an adversary hearing must be held within 14 days to review the removal, establish jurisdiction, and determine placement unless extended for extraordinary cause.

Plaintiff's children were removed months before this deadline but DFPS and the Court failed to schedule or hold any adversary hearing within the statutory 14-day window or a reasonable timeframe, resulting in nearly a 90-day delay before Plaintiff was afforded a hearing. This egregious delay prolonged the unconstitutional separation of Plaintiff from Parker and Greyson without meaningful judicial review.

Despite this delay, DFPS proceeded to seek further removal and "safety plans" against Plaintiff, relying on fabricated evidence obtained through flawed procedures.

On July 29, 2025, and subsequently, Plaintiff's counsel served lawful subpoenas on DFPS and contracted laboratories (Quest Diagnostics, Omega, i3Screen, Texas Drug & Alcohol Testing Services) requesting full disclosure of drug testing protocols, chain-of-custody records, and internal communications relevant to the case.

DFPS and laboratory defendants ignored the subpoenas and failed to provide the requested documentation or respond appropriately, obstructing Plaintiff's ability to challenge unreliable and misrepresented evidence.

The case was later dismissed without prejudice, meaning it was closed without resolution on the merits and without requiring DFPS to carry the burden of proof, leaving Plaintiffs with no remedy or restoration and further compounding due process injuries.

This dismissal, in combination with the delayed hearing and discovery obstruction, deprived Plaintiff and Plaintiffs' children of their constitutional rights to timely hearings, fair process, confrontation of evidence, and meaningful judicial determination under the Fourth and Fourteenth Amendments.

## V. CLAIMS FOR RELIEF

Count 1 – 42 U.S.C. § 1983: Fourteenth Amendment Due Process Violation

Plaintiffs had a clearly established constitutional right to procedural due process before being deprived of their fundamental liberty interest in the care, custody, and companionship of their children. This includes timely notice, a meaningful opportunity to be heard, and adjudication based on reliable evidence.

Defendants violated this right by:

Removing Parker and Greyson from Plaintiff's custody without adequate notice or fair hearings within the statutorily required 14 days, instead delaying adversary hearings for nearly 90 days;

Relying on fabricated, unreliable, and scientifically unsound evidence without providing Plaintiffs an opportunity for cross-examination or confrontation;

Dismissing Plaintiff's challenges without requiring DFPS to bear the burden of proof or lawfully adjudicate allegations, leaving Plaintiffs without a remedy;

Obstructing Plaintiff's access to evidence through willful noncompliance with lawful subpoenas, denying fair process and judicial oversight.

These acts constitute a flagrant violation of Plaintiffs' Fourteenth Amendment due process rights.

Count 2 – 42 U.S.C. § 1983: Fourth Amendment Unreasonable Search and Seizure

Plaintiff Alisa Golz's Fourth Amendment right to protection against unreasonable searches and seizures was violated when:

Defendant Chelsea Campos entered and searched Plaintiff's home without a warrant, probable cause, exigency, or proper notice;

Defendant Maeretha Wilburn ordered Greyson's daycare to unlawfully withhold custody from Plaintiff without any court order or lawful safety plan authorization, constituting an illegal seizure of Greyson.

These actions were undertaken under color of state law without constitutional justification, constituting an unlawful intrusion and seizure.

Count 3 – 42 U.S.C. § 1983: First Amendment Retaliation

Plaintiff Alisa Golz engaged in protected speech by raising grievances, filing complaints about evidentiary irregularities, and advocating for her parental rights. Defendants retaliated by:

Imposing punitive visitation restrictions and gag orders restricting Plaintiff's and Parker's speech;

Suppressing Parker's independent expressions of desire to live with his mother;

Restricting family interactions and communications in retaliation for Plaintiff's protected conduct.

Such acts violate the First Amendment's protections against retaliation for exercising free speech and association.

Count 4 – 42 U.S.C. § 1983: Fourteenth Amendment Familial Association Rights

The liberty interest protected by the Fourteenth Amendment encompasses the rights of parents and children to live together and maintain family bonds, including sibling relationships.

Defendants infringed these rights by:

Preventing Parker and Greyson from visiting or interacting with one another for over four months without legal basis or procedural safeguards;

Prohibiting unsupervised visitation and private communication between Parker and his maternal grandmother and mother;

Withholding Greyson from Plaintiff pursuant to unlawful daycare directives devoid of court orders or valid safety plans.

These unjustified restraints on familial association inflicted irreparable harm and violate Plaintiffs' constitutional rights.

Count 5 – Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132

Plaintiff Alisa Golz, as an individual with a recognized disability (ADHD), was entitled to reasonable accommodations during all CPS and DFPS proceedings. Defendants discriminated by:

Denying requested accommodations including extended deadlines, written instructions, and neutral observers;

Retaliating against Plaintiff after asserting ADA rights;

Disparaging Plaintiff's legally prescribed medication, undermining her parental capacity unjustly.

These acts constitute discrimination in violation of Title II of the ADA.

Count 6 – 42 U.S.C. § 1985(2): Conspiracy to Interfere with Civil Rights

Defendants, including DFPS staff and contracted laboratories, conspired to:

Fabricate, alter, and knowingly submit false evidence;

Suppress exculpatory evidence and obstruct discovery;

Interfere with Plaintiffs' constitutional and legal rights to family integrity and due process.

This conspiracy subjected Plaintiffs to deprivation of rights in violation of 42 U.S.C. § 1985(2).

Count 7 – Monell Liability

DFPS is liable for constitutional violations resulting from municipal policies, customs, and practices, including but not limited to:

Reliance on fabricated drug test results to justify removals;

Systematic use of coerced Safety Plans as de facto orders;

Failure to provide ADA accommodations;

Deliberate evasion of subpoenas and failure to provide hearings timely.

Such conduct is attributable to DFPS under Monell and is actionable.

Count 8 – State Law Claims

Defendants' false reports and affidavits defamed Plaintiff and her children, placing them in false light, and caused severe emotional distress. Defendants acted negligently and with gross negligence in evidence handling and procedural compliance, resulting in harm.

Count 9 – 42 U.S.C. § 1983: Fifth Amendment Self-Incrimination Violation

Plaintiff Alisa Golz was subjected to compelled custodial interrogation without advisement of rights to remain silent or to counsel. Statements were obtained coercively and used against her without the constitutional protections required by Miranda v. Arizona, infringing her Fifth Amendment rights incorporated by the Fourteenth Amendment.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and issue the following relief:

A. A declaratory judgment declaring that Defendants' acts and omissions violated Plaintiffs' rights under the Fourth, Fifth, First, and Fourteenth Amendments to the United States Constitution; Title II of the Americans with Disabilities Act; 42 U.S.C. §§ 1983 and 1985; and applicable Texas state law.

B. An order directing Defendants to expunge and permanently remove all falsified, fabricated, or misleading evidence—including drug test results and affidavits—relied upon in the investigation, removal proceedings, and custody decisions regarding Plaintiffs.

C. Award compensatory damages to Plaintiffs in an amount not less than five million dollars ($5,000,000) for the substantial emotional distress, loss of familial association, deprivation of parental care, and other harms suffered as a direct and proximate result of Defendants' unlawful actions.

D. Award punitive damages against individual Defendants, including but not limited to Maeretha Wilburn and Chelsea Campos, in an amount sufficient to punish and deter future willful misconduct and malicious violations of civil rights.

E. Award Plaintiffs' reasonable attorneys' fees, costs of litigation, and all other expenses recoverable under 42 U.S.C. § 1988 and other applicable fee-shifting statutes.

F. Issue injunctive relief compelling Defendants to establish a distinct, dedicated Parental Rights Division within the Texas Department of Family and Protective Services, with a clear mandate and sufficient resources to:

Protect and safeguard parental rights consistent with constitutional and statutory mandates;

Oversee and monitor all parental removal, reunification, and custody proceedings to prevent future abuses;

Ensure prompt, transparent, and meaningful engagement with parents and families;

Implement robust safeguards and training to prevent evidence fabrication, coercion, discrimination, and improper procedural practices.

G. Appoint Plaintiff Alisa Golz as the inaugural Director of the Parental Rights Division or an equivalent senior supervisory role, recognizing her lived experience, her demonstrated leadership in advocating for systemic reform, and her deep commitment to defending the rights of parents and children across Texas. Such appointment would uniquely empower systemic transformation rooted in the insight of those directly affected.

H. Grant such other and further relief as this Court deems just, equitable, and proper to fully remedy Defendants' violations and ensure the safeguarding of Plaintiffs' constitutional and statutory rights.

## VII. JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

/s/ _[signature]_

Alisa Golz in propria persona sui juris without prejudice
Plaintiff, and Next Friend of minor Plaintiffs
Parker Golz and Greyson McCallum

303B Fantail Loop, Lakeway, TX 78734
512-679-6541 | alisagolz62@gmail.com

Date: 08/14/25